CHAMPLIN *v.* CHAMPLIN AND OTHERS.

ALTHOUGH articles of separation are condemned by the policy of the law, and will rarely be enforced between the parties, yet collateral engagements between the husband or third parties contained in them, will be executed. The duty of maintaining children lasts until they arrive at large, unless they come within the provisions of the statute respecting the support of the poor.

Where a provision was made in articles, giving the wife the income of property, paying out of them an annuity to the husband, and to apply so much of the residue as might be necessary from time to time, towards the support of the children, no bill will lie to call for a proportionate share of the rents, after deducting the amounts paid for maintenance.

*Mr. McKay,* for the complainant.

*Mr. Warner,* for defendant.

July 8, 11.

THE ASSISTANT VICE-CHANCELLOR:—By the will of Elizabeth De Peyster, dated 19th November, 1817, her daughter, Elizabeth S. Champlin, took an estate and interest in certain real and personal estate.

A devise is first made to her and to her children forever, of two particular lots of ground, running from Broadway to Mercer-street.

Next, a devise is made to her and her children forever, of the premises on which she lived, with power to her daughter to lease or sell as she pleases; to enjoy the rent thereof, or the interest and proceeds, during her natural life, if she should die before the youngest child attained twenty-one years of age, the rent or interest was to be applied to the education and maintenance of her children, until the youngest child attained twenty-one, at which time the proceeds, if sold, (and if not sold it was then to be sold,) were to be divided among her children, share and share alike.

She gave the residue of her freehold estate, lands and tenements, to E. S. Champlin, Wm. G. Jones, John Clark

and Elbert Herring, upon trust to sell, or lease, and to vest the proceeds upon such security as they should think proper; the rent or income of such part as should not be sold, and the interest of the proceeds of the portion which the trustees should sell, to be paid to her daughter, Eliza S. Champlin, during her natural life. If she died before her youngest child attained the age of twenty-one years, then to apply the income and interest of all her estate, real and personal, that would have belonged to her daughter Elizabeth, towards the education and maintenance of her children, until her youngest child should attain twenty-one years; and immediately after the death of her daughter, if her youngest child should be twenty-one years old, (and if not twenty-one, then as soon as she should be twenty-one,) all her estate, real and personal, should be divided among all the children of her daughters, Margaret De Peyster and Elizabeth S. Champlin.

It is not necessary, in the view I have taken of the case, to ascertain precisely the rights of Elizabeth Schuyler Champlin under this will. Her husband, of course, acquired a certain interest in the property to which she became entitled.

An instrument of separation, dated the first day of December, 1827, was made between the parties. In that, Uriah O. Champlin was party of the first part, Elizabeth his wife, of the second part, and Israel Dean and John De Peyster, trustees, of the third part; and by it, all the estate and right of the party of the first part, of and in the real and personal estate of the said Elizabeth, of which she was then seised, or might become entitled to, was conveyed to such trustees; first, to pay to the husband an annuity of $350 for the first year, $450 the second year, and $500 a year subsequently; " secondly, upon trust, so long as they " both should live, to permit the party to use, occupy and " enjoy, and to sell and convey the said real estate, and to " take the rents, issues and profits thereof: first paying " thereout the said annuity, in quarter yearly payments as " aforesaid, and applying of the remainder, so much thereof " as may be necessary for the purpose, from time to time,

" towards the support, maintenance and education of the " children of the said parties, of the first and second part."

If Mrs. Champlin survived her husband, the whole property was to be conveyed to her.

It is insisted, that by the clause I have quoted, a trust was created for the children; that they have a right to call for a proportion of such rents and income as might be sufficient for their maintenance, or for their maintenance and education, and for the whole of the surplus, if insufficient for that purpose. On this ground the bill is filed, seeking payment of the complainant's proportion of such rents and profits.

The first objection which suggests itself is, whether any collateral stipulation can be enforced, under an agreement for a separation, now so generally condemned by jurists. A great shock was given by Lord Eldon to the doctrine upon instruments of separation; but even if it were doubtful, upon a strict scrutiny of cases, whether the old authorities have been overthrown, or do not still form the law of our State, it is certain that the accessory and dependent parts of the agreement may be enforced. Mr. Atherly, whose views are always marked by boldness and clearness, says, that Lord Eldon considered such settlements as against the policy of the law, and therefore void *ab initio*. But he admits, that he found himself bound by decisions which had settled the law. (On *Marriage Settlements*, p. 384.) And Lord Rosslyn, in *Legard v. Johnson*, (3 *Vesey*, 358,) says, that the first question was a general one; whether taking it in the largest extent, a suit in equity is competent to give effect by the aid of this court, to a deed of separation between husband and wife.

Sir William Grant ( *Worrall v. Jacob*, 3 *Merivale*, 268,) states, that it is settled, that this court will not carry into execution, articles of separation between husband and wife. It recognizes no power in them to vary the rights and duties growing out of the marriage contract, or to effect at their pleasure a partial dissolution of that contract. The object of the covenants between the husband and trustee, is to give efficacy to the agreement between the

1839.

Champlin
*v.*
Champlin.

1839.

Champlin
v.
Champlin.

husband and wife, and it does seem rather strange, that the auxiliary agreement should be enforced, while the principal agreement is held to be contrary to the spirit and policy of the law. It has been held, however, that engagements entered into between the husband and a third party, shall be held valid and binding. (See also, *More* v. *Freeman, Bunbury*, 205.  3 *Br. P. C.* 378.  *Bright* v. *Chapman*, 2 *Anst.* 345.  *Caison* v. *Murray*, 3 *Paige*, 486.  *Rogers* v. *Rogers*, 4 *Paige*, 516.  *Elworthy* v. *Bird*, 2 *Sim. & St.* 381.)

Although there is no covenant in this instrument that the husband shall not be subject to the debts of the wife, yet I consider it so clearly valid, as to entitle the husband to recover the annuity in his life time, and to entitle all persons for whom provision is made under it, to their appropriate remedy.

The case appears to turn upon the question, whether these children had a vested right to a portion of the surplus of the income.

The instrument conveyed that estate, or those rights to which the husband was entitled, and no more ; and the clause in question is limited to the rents and profits of the real estate.

I have no doubt, that if any interest was acquired under the separation deed, it did not pass to the grantee, under the conveyance now held by Mr. Selden.  The husband's rights were the subject of the deeds, and were wholly distinct from any interest of the complainant under the will.

It seems to me, after the best consideration I can give the instrument, that the clause in question was inserted, chiefly, to prevent any part of the burthen of supporting the children from falling upon the father, and being chargeable to his annuity.  The right to permit the wife to take the rents and profits is conferred absolutely, paying thereout the annuity, and applying so much of the remainder as might be necessary, from time to time, towards the support, maintenance and education of the children.

It is clear, that by the operation of the second clause, the trustee could lawfully permit the wife to receive the whole

income, and pay the annuity. It is likewise obvious, that entire discretion is given to her as to the amount to be applied. I think, also, though with hesitation, that as the intention was merely to exonerate the father from his liability, so it was only to attach the same liability to the mother, in consequence of her reception of the whole income. Now the duty of maintenance continued only until the children arrived at age, unless they came within the provisions of the statute as to poor and other persons unable to maintain themselves. (1 *R. L.* 1813, p. 286, § 21. 2 *R. S.* vol. 1, p. 614.) Nothing more seems legally implied in the provision, than this legal responsibility. But even where this has been grossly neglected, no court, I presume, ever heard of an action by a child, for a recovery of what ought to have been applied. Those who supported or educated him, could have sustained a suit, but not himself. (13 *Johns. Rep.* 480. *Van Vilkinburgh* v. *Watson.*)

The testimony justifies the conclusion, that the ill conduct of the complainant drove him from his mother's house, and that supplies of money have been furnished him. The note given to John T. Champlin for $700, is declared by him to be held in trust, and was money advanced to set the complainant up in a store. Still if there was a plain trust in the surplus, I should be compelled to direct an account.

My opinion, however, being formed upon the ground before stated, I must dismiss the bill, but without costs.